IN THE COURT OF COMMON PLEAS
HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| SARAH ELLIS<br>134 Tener Rd.<br>Peebles, OH 45660 | )<br>)<br>) | CASE NO.<br><br>JUDGE: |
| Plaintiff, | )<br>)<br>) | |
| v. | )<br>) | **COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF** |
| HEALTHSOURCE OF OHIO, INC.<br>4627 Aicholtz Rd.<br>Cincinnati, OH 45244 | )<br>)<br>)<br>) | **JURY DEMAND ENDORSED HEREIN** |
| **Serve also:**<br>HEALTHSOURCE OF OHIO,<br>INC. c/o Kimberly Patton<br>(Stat. Agent)<br>424 Wards Corner Rd.<br>Loveland, OH 45140 | )<br>)<br>)<br>)<br>)<br>)<br>) | |
| Defendant. | )<br>) | |

Plaintiff Sarah Ellis, by and through undersigned counsel, as her Complaint against the Defendant, states and avers the following:

## PARTIES

1. Ellis is a resident of the city of Peebles, Adams County, Ohio.

2. Defendant HEALTHSOURCE OF OHIO, INC. ("HealthSource") is a domestic not-for-profit corporation that conducts business throughout the state of Ohio.

3. HealthSource is, and was at all times hereinafter mentioned, Ellis's employer within the meaning of the Americans with Disabilities Act ("ADA") 42 U.S.C. 126 § 12101 et seq., Ohio R.C. §4101 et seq., and Ohio R.C. §4112, et seq.

4. Within 300 days of the adverse employment actions described herein, Ellis dual-filed a Charge of Discrimination with the Equal Employment Opportunity Commission

("EEOC") and Ohio Civil Rights Commission ("OCRC") against HealthSource, Charge No. 473-2022-01823 ("EEOC Charge").

5. On or about January 26, 2023, the EEOC issued and mailed a Notice of Right to Sue letter to Ellis regarding her EEOC Charge.

6. Ellis received the Notice of Right to Sue letter from the EEOC in accordance with 42 U.S.C. § 200e-5(f)(1), which had been attached hereto as Plaintiff's Exhibit 1.

7. Ellis has filed this Complaint on or before the 90-day deadline set forth in the Notice of Right to Sue letter.

8. Ellis has properly exhausted all administrative remedies pursuant to 29 C.R.F. § 1614.407(b).

## JURISDICTION & VENUE

9. All of the material events alleged in this Complaint occurred in or around Hamilton County, Ohio.

10. Therefore, personal jurisdiction is proper over Defendant pursuant to R.C. § 2307.382(A)(1) and/or (3).

11. Venue is proper pursuant to Civ. R. 3(C)(1), (3), and/or (6).

12. This Court is a court of general jurisdiction over the claims presented herein, including all subject matters of this Complaint.

## FACTS

13. Ellis is a former employee of HealthSource.

14. At all times noted herein, Ellis was qualified for her position with HealthSource.

15. At all times noted herein, Ellis could fully perform the essential functions of her job, with or without reasonable accommodation.

16. Ellis worked for HealthSource as a call center agent from April 17, 2021, until HealthSource unlawfully terminated her employment on or about November 17, 2021.

17. Ellis suffers from diabetes (II), depression, anxiety, non-alcoholic steatohepatitis ("NASH"), and suffered from COVID-19, pneumonia, and ground glass opacity in the lungs, placing her in a protected class for her disabilities.

18. HealthSource had notice of Ellis's disabilities during her employment.

19. During her time at HealthSource, Ellis experienced multiple instances of disability discrimination, and a wrongful termination in violation of public policy.

20. The beginning of Ellis's employment generally went well, until October 2021.

21. Around October 2021, Ellis received a written warning for attendance.

22. Ellis obtained custody of her grandson and told call center manager Barbara Cantrell she needed to go part-time.

23. Cantrell approved this, and Ellis started working 32 hours per week.

24. However, Ellis was still written up for not coming in for the full 40 hours. Disparately, Healthsource did not reprimand abled employees when they worked under 40 hours per week despite being part-time employees.

25. During Ellis's employment, she gave notice of her disabilities to HealthSource on multiple occasions.

26. Ellis had her doctors regularly send in notices of her disabilities to her supervisors via fax and also worked with HealthSource's Employee Assistance Program ("EAP") to give notice.

27. On or about October 27, 2021, Ellis's significant other caught COVID-19.

28. A few days later, Ellis was diagnosed with COVID-19 as well.

29. On or about November 2, 2021, Ellis gave HealthSource notice of her diagnosis through her doctor.

30. During this time, Ellis was bedridden and could not come to work.

31. Ellis was told to quarantine for ten days and went to the doctor four times throughout these ten days.

32. On each of these visits, Ellis had her doctor send updates to HealthSource HR. This was her effort to engage in the interactive process of finding a reasonable accommodation.

33. By the end of the ten days of quarantine, Ellis had not recovered, and she continued to stay home on doctor's orders.

34. Ellis went to the doctor three more times and kept sending regular updates to HealthSource through the doctor.

35. Ellis was diagnosed with COVID-19, pneumonia, and ground glass opacity in her lungs, and she lost 27 pounds over this short period. Ellis was confined to her bed for approximately 22 hours per day.

36. However, Ellis recovered with time.

37. On or about November 23, 2021, Ellis was released back to work.

38. Ellis tried calling HealthSource for information on when to return, but no one answered her calls.

39. Ellis tried emailing as well but again received no response.

40. On or about November 22, 2021, Ellis phoned HR and found out she had been unlawfully terminated on or about November 17, 2022, citing job abandonment.

41. This termination of Ellis's employment constituted an adverse employment action.

42. However, Ellis still hadn't received any termination letter at the time.

4

43. Ellis asked to have the director of HR call her.

44. On or about November 23, 2021, Ellis spoke to HR director Amado Martinez.

45. Ellis explained her disabilities and diagnosis and told Martinez that she had sent notice to HealthSource through the doctor.

46. Martinez said HealthSource didn't receive any documents, to which Ellis responded that she would send them again.

47. Martinez told Ellis it didn't matter and sent her the termination letter. Her termination thus stood.

48. There was a causal connection between Ellis's disabilities and HealthSource's termination of Ellis's employment.

49. HealthSource actually terminated Ellis's employment in an act of disability discrimination.

50. HealthSource actually terminated Ellis's employment in violation of public policy.

51. As a result of the above, Ellis has suffered and will continue to suffer damages.

**COUNT I: DISABILITY DISCRIMINATION IN VIOLATION OF R.C. §4112 et seq.**

52. Ellis restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

53. Ellis suffers from diabetes (II), depression, anxiety, and NASH, and suffered from COVID-19, pneumonia, and ground glass opacity in the lungs, placing her in a protected class for her disabilities.

54. Ellis is disabled.

55. In the alternative, HealthSource perceived Ellis as being disabled.

56. Ellis's condition constituted a physical impairment.

57. Ellis's condition substantially impaired one or more of her major life activities including working.

58. HealthSource perceived Ellis's condition to substantially impair one or more of her major life activities including working.

59. HealthSource treated Ellis differently than other similarly-situated employees based on her disabling condition.

60. HealthSource treated Ellis differently than other similarly-situated employees based on her perceived disabling condition.

61. During her time at HealthSource, Ellis was diagnosed with COVID-19 and needed to take time off to quarantine.

62. Ellis consistently gave notice to HealthSource regularly throughout her time off.

63. However, Ellis's employment was terminated for job abandonment.

64. The temporal proximity of Ellis's quarantine and her termination implies that she was terminated for her disability.

65. Alternatively, Defendant's cited reason for Ellis's termination was pretext.

66. Defendant terminated Ellis's employment based on her disability.

67. Defendant terminated Ellis's employment based on her perceived disability.

68. Defendant violated R.C. § 4112.02 when it discharged Ellis based on her disability.

69. Defendant violated R.C. § 4112.02 when it discharged Ellis based on her perceived disability.

70. Defendant violated R.C. § 4112.02 by discriminating against Ellis based on her disabling condition.

71. Defendant violated R.C. § 4112.02 by discriminating against Ellis based on her perceived disabling condition.

72. Ellis suffered emotional distress as a result of Defendant's conduct, and is entitled to emotional distress damages pursuant to R.C. § 4112.01 et seq.

73. As a direct and proximate result of Defendant's conduct, Ellis suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.

**COUNT II: DISABILITY DISCRIMINATION IN VIOLATION OF THE ADA**

74. Ellis restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

75. Ellis suffers from diabetes (II), depression, anxiety, and NASH, and suffered from COVID-19, pneumonia, and ground glass opacity in the lungs, placing her in a protected class for her disabilities.

76. Ellis is disabled.

77. In the alternative, HealthSource perceived Ellis as being disabled.

78. Ellis's condition constituted a physical impairment.

79. Ellis's condition substantially impaired one or more of her major life activities including working.

80. HealthSource perceived Ellis's condition to substantially impair one or more of her major life activities including working.

81. HealthSource treated Ellis differently than other similarly-situated employees based on her disabling condition.

82. HealthSource treated Ellis differently than other similarly-situated employees based on her perceived disabling condition.

83. During her time at HealthSource, Ellis was diagnosed with COVID-19 and needed to take time off to quarantine.

84. Ellis consistently gave notice to HealthSource regularly throughout her time off.

85. However, Ellis's employment was terminated for job abandonment.

86. The temporal proximity of Ellis's quarantine and her termination implies that she was terminated for her disability.

87. Alternatively, Defendant's cited reason for Ellis's termination was pretext.

88. Defendant terminated Ellis's employment based on her disability.

89. Defendant terminated Ellis's employment based on her perceived disability.

90. Defendant violated the ADA when it discharged Ellis based on her disability.

91. Defendant violated the ADA when it discharged Ellis based on her perceived disability.

92. Defendant violated the ADA by discriminating against Ellis based on her disabling condition.

93. Defendant violated the ADA by discriminating against Ellis based on her perceived disabling condition.

94. Ellis suffered emotional distress as a result of Defendant's conduct, and is entitled to emotional distress damages pursuant to the ADA

95. As a direct and proximate result of Defendant's conduct, Ellis suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.

**COUNT III: FAILURE TO ACCOMMODATE IN VIOLATION OF R.C. § 4112.01 et seq.**

96. Ellis restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

97. Ellis informed HealthSource of her disabling condition on or about November 2, 2021.

98. Ellis requested accommodations from HealthSource to assist with her disabilities, including time off for her to recover.

99. Ellis's requested accommodations were reasonable.

100. There was an accommodation available that would have been effective and would have not posed an undue hardship to HealthSource

101. HealthSource failed to engage in the interactive process of determining whether Ellis needed an accommodation.

102. HealthSource failed to provide an accommodation.

103. Defendant violated R.C. § 4112.02 by failing to provide Ellis a reasonable accommodation.

104. Ellis suffered emotional distress as a result of Defendant's conduct, and is entitled to emotional distress damages pursuant to R.C. § 4112.01 et seq.

105. As a direct and proximate result of Defendant's conduct, Ellis suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.

## COUNT IV: FAILURE TO ACCOMMODATE IN VIOLATION OF THE ADA

106. Ellis restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

107. Ellis informed HealthSource of her disabling condition on or about November 2, 2021.

108. Ellis requested accommodations from HealthSource to assist with her disabilities, including time off for her to recover.

109. Ellis's requested accommodations were reasonable.

110. There was an accommodation available that would have been effective and would have not posed an undue hardship to HealthSource

111. HealthSource failed to engage in the interactive process of determining whether Ellis needed an accommodation.

112. HealthSource failed to provide an accommodation.

113. Defendant violated the ADA by failing to provide Ellis with a reasonable accommodation.

114. Ellis suffered emotional distress as a result of Defendant's conduct, and is entitled to emotional distress damages pursuant to the ADA.

115. As a direct and proximate result of Defendant's conduct, Ellis suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.

**COUNT V: WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY**

116. Ellis restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

117. A clear public policy exists and is manifested in Ohio statutes and/or administrative regulations, or in the common law, against terminating and/or retaliating against an employee because he/she engages in protected activity under Ohio law.

118. A clear public policy exists and is manifested in R.C. § 4101.11 stating that "[e]very employer shall furnish employment which is safe for the employees engaged therein," and "[n]o employer shall require, permit, or suffer any employee to go or be in any employment or place of employment which is not safe…"

119. The Ohio Supreme Court recognized that Ohio allows an individual to seek a public policy claim if she is terminated in retaliation for reporting to her employer that she is forced to work in an unsafe work environment. *Greeley v. Miami Valley Maintenance Contrs., Inc.*, (1990), 49 Ohio St.3d 228. *See also Pytlinski v. Brocar Products, Inc.*, 94 Ohio St.3d 77 (Ohio 2011); *Jenkins v. Cent. Transp., Inc.*, No. 09CV525, 2010 WL 420027 (N.D. Ohio Jan. 29, 2010).

120. A clear public policy exists and is manifested in Ohio statutes, and/or administrative regulations, or in the common law, against terminating an employee based on his complaints of dangerous, unsafe, or illegal activity.

10

121. A clear public policy exists and is manifested in the interest of preventing the spread of COVID-19.

122. During Ellis's time at HealthSource, she suffered from COVID-19.

123. Ellis took time off to quarantine.

124. After Ellis recovered and attempted to go back to work, her employment was terminated on or about November 17, 2021, citing job abandonment for the time she took to quarantine.

125. The temporal proximity of Ellis's quarantine and her termination implies a causal connection.

126. By terminating an employee for quarantining when they have COVID-19, HealthSource discourages other employees from coming forward if they have COVID-19.

127. Defendant's termination of Ellis jeopardizes these public policies.

128. Defendant's termination of Ellis was motivated by conduct related to these public policies.

129. Defendant had no overriding business justification for terminating Ellis.

130. As a direct and proximate result of Defendant's conduct, Ellis has suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.

## DEMAND FOR RELIEF

WHEREFORE, Ellis demands from Defendant the following:

a) Issue a permanent injunction:

　　i. Requiring Defendant to abolish discrimination, harassment, and retaliation;

      ii.    Requiring allocation of significant funding and trained staff to implement all changes within two years;

      iii.   Requiring removal or demotion of all supervisors who have engaged in discrimination, harassment, or retaliation, and failed to meet their legal responsibility to promptly investigate complaints and/or take effective action to stop and deter prohibited personnel practices against employees;

      iv.   Creating a process for the prompt investigation of discrimination, harassment, or retaliation complaints; and

      v.    Requiring mandatory and effective training for all employees and supervisors on discrimination, harassment, and retaliation issues, investigations, and appropriate corrective actions;

b) Issue an order requiring Defendant to expunge her personnel file of all negative documentation;

c) An award against each Defendant for compensatory and monetary damages to compensate Ellis for physical injury, physical sickness, lost wages, emotional distress, and other consequential damages, in an amount in excess of $25,000 per claim to be proven at trial;

d) An award of punitive damages against each Defendant in an amount in excess of $25,000;

e) An award of reasonable attorneys' fees and non-taxable costs for Ellis's claims as allowable under law;

f) An award of the taxable costs of this action; and

g) An award of such other relief as this Court may deem necessary and proper.

Respectfully submitted,

/s/ Matthew Bruce
Matthew G. Bruce (0083769)
    Trial Attorney
Evan R. McFarland (0096953)
**SPITZ, THE EMPLOYEES' LAW FIRM**
Spectrum Office Tower
11260 Chester Road, Suite 825
Cincinnati, Ohio 45246
Phone: (216) 291-0244
Fax: (216) 291-5744
Email: matthew.bruce@spitzlawfirm.com
Email: evan.mcfarland@spitzlawfirm.com

Attorneys for Plaintiff Sarah Ellis


## **JURY DEMAND**

Plaintiff Sarah Ellis demands a trial by jury by the maximum number of jurors permitted.

/s/ Matthew Bruce
Matthew G. Bruce (0083769)
    Trial Attorney
**SPITZ, THE EMPLOYEES' LAW FIRM**

13



# PAVAN PARIKH
# HAMILTON COUNTY CLERK OF COURTS

## COMMON PLEAS DIVISION

```
ELECTRONICALLY FILED
April 14, 2023 11:33 AM
     PAVAN PARIKH
   Clerk of Courts
 Hamilton County, Ohio
CONFIRMATION 1308663
```

**SARAH ELLIS**                                   A 2301579

vs.

**HEALTHSOURCE OF OHIO INC**

### FILING TYPE: FILING
### PAGES FILED: 5

EFR200

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

Cincinnati Area Office
550 Main Street, Suite 10-191
Cincinnati, OH 45202
(513) 914-6007
Website: www.eeoc.gov

# DISMISSAL AND NOTICE OF RIGHTS

(This Notice replaces EEOC FORMS 161 & 161-A)

Issued On: 01/26/2023

**To:** Sarah Ellis
134 Tener Rd
Peebles, OH 45660

Charge No: 473-2022-01823

EEOC Representative and email: JAMES WEBB
Investigator
james.webb@eeoc.gov

## DISMISSAL OF CHARGE

The EEOC has granted your request that the agency issue a Notice of Right to Sue, where it is unlikely that EEOC will be able to complete its investigation within 180 days from the date the charge was filed.

The EEOC is terminating its processing of this charge.

## NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file a lawsuit based on this charge, please sign-in to the EEOC Public Portal and upload the court complaint to charge 473-2022-01823.

On behalf of the Commission,

Digitally Signed By: Michelle Eisele
01/26/2023

Michelle Eisele
District Director

**Cc:**
Patricia Pryor
Jackson lewis
201 E 5TH ST FL 26
Cincinnati, OH 45202

Evan McFarland
The Spitz Law Firm
11260 Chester Rd Suite 825
Cincinnati, OH 45246


Please retain this notice for your records.

Enclosure with EEOC Notice of Closure and Rights (01/22)

## INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court **under Federal law**. If you also plan to sue claiming violations of State law, please be aware that time limits may be shorter and other provisions of State law may be different than those described below.)*

**IMPORTANT TIME LIMITS – 90 DAYS TO FILE A LAWSUIT**

If you choose to file a lawsuit against the respondent(s) named in the charge of discrimination, you must file a complaint in court **within 90 days of the date you *receive* this Notice**. Receipt generally means the date when you (or your representative) opened this email or mail. You should **keep a record of the date you received this notice**. Once this 90-day period has passed, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and the record of your receiving it (email or envelope).

If your lawsuit includes a claim under the Equal Pay Act (EPA), you must file your complaint in court within 2 years (3 years for willful violations) of the date you did not receive equal pay. This time limit for filing an EPA lawsuit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, your lawsuit must be filed within 90 days of this Notice **and** within the 2- or 3-year EPA period.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Filing this Notice is not enough. For more information about filing a lawsuit, go to https://www.eeoc.gov/employees/lawsuit.cfm.

**ATTORNEY REPRESENTATION**

For information about locating an attorney to represent you, go to:
https://www.eeoc.gov/employees/lawsuit.cfm.

In very limited circumstances, a U.S. District Court may appoint an attorney to represent individuals who demonstrate that they are financially unable to afford an attorney.

**HOW TO REQUEST YOUR CHARGE FILE AND 90-DAY TIME LIMIT FOR REQUESTS**

There are two ways to request a charge file: 1) a FOIA Request or 2) a Section 83 request. You may request your charge file under either or both procedures. EEOC can generally respond to Section 83 requests more promptly than FOIA requests.

Since a lawsuit must be filed within 90 days of this notice, please submit your request for the charge file promptly to allow sufficient time for EEOC to respond and for your review. Submit a signed written request stating it is a "FOIA Request" or a "Section 83 Request" for Charge Number 473-2022-01823 to the District Director at Michelle Eisele, 1010 West Ohio St Suite 1900

Indianapolis, IN 46204.

You can also make a FOIA request online at https://eeoc.arkcase.com/foia/portal/login.

Enclosure with EEOC Notice of Closure and Rights (01/22)

You may request the charge file up to 90 days after receiving this Notice of Right to Sue. After the 90 days have passed, you may request the charge file only if you have filed a lawsuit in court and provide a copy of the court complaint to EEOC.

For more information on submitting FOIA Requests and Section 83 Requests, go to: https://www.eeoc.gov/eeoc/foia/index.cfm.

### NOTICE OF RIGHTS UNDER THE ADA AMENDMENTS ACT OF 2008 (ADAAA)

The ADA was amended, effective January 1, 2009, to broaden the definitions of disability to make it easier for individuals to be covered under the ADA/ADAAA. A disability is still defined as (1) a physical or mental impairment that substantially limits one or more major life activities (actual disability); (2) a record of a substantially limiting impairment; or (3) being regarded as having a disability. *However, these terms are redefined, and it is easier to be covered under the new law.*

If you plan to retain an attorney to assist you with your ADA claim, we recommend that you share this information with your attorney and suggest that he or she consult the amended regulations and appendix, and other ADA related publications, available at: http://www.eeoc.gov/laws/types/disability_regulations.cfm.

**"Actual" disability or a "record of" a disability**

If you are pursuing a failure to accommodate claim you must meet the standards for either "actual" or "record of" a disability:

- ✓ **The limitations from the impairment no longer must be severe or significant** for the impairment to be considered substantially limiting.

- ✓ In addition to activities such as performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, thinking, concentrating, reading, bending, and communicating (more examples at 29 C.F.R. § 1630.2(i)), **"major life activities" now include the operation of major bodily functions**, such as: functions of the immune system, special sense organs and skin; normal cell growth; and digestive, genitourinary, bowel, bladder, neurological, brain, respiratory, circulatory, cardiovascular, endocrine, hemic, lymphatic, musculoskeletal, and reproductive functions; or the operation of an individual organ within a body system.

- ✓ **Only one** major life activity need be substantially limited.

- ✓ Except for ordinary eyeglasses or contact lenses, the beneficial effects of **"mitigating measures"** (e.g., hearing aid, prosthesis, medication, therapy, behavioral modifications) **are not considered** in determining if the impairment substantially limits a major life activity.

- ✓ An impairment that is **"episodic"** (e.g., epilepsy, depression, multiple sclerosis) or "**in remission**" (e.g., cancer) is a disability if it **would be substantially limiting when active**.

- ✓ An impairment **may be substantially limiting even though** it lasts or is expected to last **fewer than six months**.

Enclosure with EEOC Notice of Closure and Rights (01/22)

**"Regarded as" coverage**

An individual can meet the definition of disability if an **employment action was taken because of an actual or perceived impairment** (e.g., refusal to hire, demotion, placement on involuntary leave, termination, exclusion for failure to meet a qualification standard, harassment, or denial of any other term, condition, or privilege of employment).

- ✓ "Regarded as" coverage under the ADAAA no longer requires that an impairment be substantially limiting, or that the employer perceives the impairment to be substantially limiting.
- ✓ The employer has a defense against a "regarded as" claim only when the impairment at issue is objectively **both** transitory (lasting or expected to last six months or less) **and** minor.
- ✓ A person is not able to bring a failure to accommodate claim **if** the individual is covered only under the "regarded as" definition of "disability".

***Note:** Although the amended ADA states that the definition of disability "shall be construed broadly" and "should not demand extensive analysis," some courts require specificity in the complaint explaining how an impairment substantially limits a major life activity or what facts indicate the challenged employment action was because of the impairment. Beyond the initial pleading stage, some courts will require specific evidence to establish disability.* For moreinformation, consult the amended regulations and appendix, as well as explanatory publications, available at http://www.eeoc.gov/laws/types/disability_regulations.cfm.